# EXHIBIT A

Douglas P. Farr (13208)
Michelle Quist (13559)
**BUCHALTER, A Professional Corporation**
60 East South Temple, Suite 1200
Salt Lake City, UT 84111
Telephone:  (801) 401-8625
Email: dfarr@buchalter.com
Email:  mquist@buchalter.com

*Attorneys for Plaintiff Lynn David*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LYNN DAVID, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>WASATCH COUNTY, UTAH, a Utah political subdivision of the State of Utah; and MARK NELSON, SPENCER PARK, and MARILYN CRITTENDEN, in their individual and official capacities as Wasatch County Council Members, STEVE FARRELL, KENDALL CRITTENDEN, LUKE SEARLE, ERIK ROWLAND, KARL MCMILLAN, DANNY GOODE, JEFF WADE, in their official capacities as Wasatch County Council Members, DUSTIN GRABAU, individually and as Wasatch County Manager, HEBER LEFGREN, individually and as Wasatch County Assistant Manager, NATALIE FOSTER, individually and as Wasatch County Manager Administrative Assistant, JOEY D. GRANGER, Wasatch County Clerk-Auditor, SCOTT SWEAT, Wasatch County Attorney,<br><br>    Defendants. | **FIRST AMENDED COMPLAINT AND JURY DEMAND**<br><br><br>Case No. 2:24-cv-00215<br><br>Judge Howard C. Nielsen, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Lynn David ("David") files this First Amended Complaint and Jury Demand against Defendants Wasatch County, Utah (the "County"), and Mark Nelson, Spencer Park, and Marilyn Crittenden, individually and in their official capacities as Wasatch County Council Members, Steve Farrell, Kendall Crittenden, Luke Searle, Erik Rowland, Karl McMillan, Danny Goode, Jeff Wade, in their official capacities as Wasatch County Council Members (all Wasatch County Council Members collectively, the "Council"), as well as Wasatch County Manager Dustin Grabau, individually and as Wasatch County Manager, Heber Lefgren, individually and in his official capacity as Wasatch County Assistant Manager, Administrative Assistant Natalie Foster, individually and in her official capacity, Wasatch County Clerk-Auditor Joey D. Granger in her official capacity, and Wasatch County Attorney Scott Sweat, in his official capacity (collectively, together with the County and the Council, "Defendants"), and allege as follows:

## **NATURE OF ACTION**

1.      David seeks a declaratory judgment that Defendants have failed to enforce the County's rules and regulations and that such failures have damaged David and his property in Brighton Estates in an amount no less than $240,000.

2.      Additionally, in response to David's efforts to protect these rights, the Defendants have violated David's First Amendment free speech and access rights arising under the Utah and United States Constitutions during Council meetings and retaliated against him for attempting to exercise such rights, causing damage in an amount no less than $500,000.

3.      This action is also against County officials for conspiring to deprive David of his civil rights pursuant to Title 42 Section 1983 of the United States Code, specifically for violating David's right to speak at public meetings.

**PARTIES**

4.      Plaintiff Lynn David is an individual who lives in Wasatch County.

5.      Defendant Wasatch County is a political subdivision of the State of Utah under Title 17 of the Utah Code.

6.      Defendant Mark Nelson is a County Council member in Wasatch County and was Chair of the County Council in 2022.

7.      Defendant Spencer Park is a County Council member in Wasatch County and was Chair of the County Council in 2023.

8.      Defendant Marilyn Crittenden was a County Council member in Wasatch County in 2022.

9.      Defendant Steve Farrell is a County Council member in Wasatch County.

10.      Defendant Kendall Crittenden is a County Council member in Wasatch County.

11.      Defendant Luke Searle is a County Council member in Wasatch County.

12.      Defendant Erik Rowland is a County Council member in Wasatch County.

13.      Defendant Karl McMillan is a County Council member in Wasatch County.

14.      Defendant Danny Goode was a County Council member in Wasatch County in 2022.

15.      Defendant Jeff Wade was a County Council member in Wasatch County in 2022.

16.      Defendant Dustin Grabau is an individual employed by Wasatch County as the Wasatch County Manager.

17.      Defendant Heber Lefgren is an individual employed by Wasatch County as the Assistant Wasatch County Manager.

18.     Defendant Natalie Foster is an individual employed by Wasatch County as the Administrative Assistant to the Wasatch County Manager. Defendant Foster has also been identified by an employee in the Wasatch County Manager's Officer as the Wasatch County employee contact for the Wasatch County "Engineering Department."

19.     Defendant Joey D. Granger is the elected Wasatch County Clerk-Auditor.

20.     Defendant Scott Sweat is the elected Wasatch County Attorney and the statutory agent designated to receive a notice of claim on behalf of Wasatch County pursuant to the Utah Division of Corporations and Commercial Code in compliance with Utah Code Ann. § 63G-7-401(5).

## JURISDICTION AND VENUE

21.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 in that David's claims arise under the United States Constitution and under federal statute, 42 U.S.C. § 1983.

22.     The Court has supplemental jurisdiction over David's state law claims under 28 U.S.C. § 1367 as the claim for violation of David's constitutional rights arise and the claims arising under state law all arise under a common nucleus of operative of facts.

23.     Venue is proper in this district pursuant 28 U.S.C. § 1391(b) and (c).

## GENERAL ALLEGATIONS

24.     David has owned property in Midway, Utah, Wasatch County, since 2011, is a community member, and has been an active business owner in Wasatch County.

25.     Much to the chagrin of Defendants, David is an active and involved community organizer. For example, when David noticed that the County had improperly recharacterized his

property tax status from resident to nonresident, which resulted in a significantly higher tax bill, not only did he successfully appeal his tax bill, but he publicly communicated the covert recharacterization of his property and many of his neighbors' properties to the community, the media, the Federal Trade Commission, the Utah State Auditor's Office, and the Federal Consumer Financial Protection Bureau.

26.    Additionally, David frequently requests government records from the County pursuant to the Government Records Access and Management Act (GRAMA) and is often forced to appeal the County's denial of such requests to the State Records Committee. The County sees his requests as a nuisance and often forces David to expend great personal time and resources simply to access basic County records that should be easily available to the public.

27.    In 2020 David purchased property in a secluded subdivision within the County called Brighton Estates.

***Defendants allowed an illegal commercial boulder extraction operation in Summit County despite David's complaints.***

28.    Since at least 2021, nonparties BRBE, LLC and William Eschenfelder (collectively, "Eschenfelder") have been operating an illegal boulder extraction operation on adjoining property to the detriment of David and his property. David witnessed large, commercial equipment repeatedly accessing the adjoining property and exiting with large boulders.

29.    Despite the nature of the adjoining property owner's illegal activities, Defendants have refused to enforce the County's rules, regulations, and policies to require that Eschenfelder obtain the appropriate permits and follow County code or stop the illegal activities.

30.     Under the County code, a boulder extraction operation is illegal in a "Mountain Zone" such as Brighton Estates.

31.     David filed a complaint with the County concerning the illegal boulder extraction operation being conducted on the Eschenfelder property without the appropriate permits. In 2021, the County sent a certified letter to Eschenfelder to stop the illegal boulder extraction, but the extraction operation continued.

32.     At least three other residents in Brighton Estates have also complained to the County regarding the illegal boulder extraction operation on the Eschenfelder property.

33.     At the direction of at least one Council member, the County was instructed to issue Eschenfelder a permit. Defendant Grabau called a meeting of County employees involved in the approval of the grading permit for the illegal boulder extraction operation. The meeting occurred on August 8, 2022. Despite the process typically taking two-to-three weeks, the County approved the permit for Eschenfelder 24 hours after Eschenfelder submitted its application.

34.     On August 19, 2022, the County approved the permit without a majority of the required documentation and without requiring tens of thousands of dollars in payments of fines that were due, pursuant to the County's own code, for operating without the required permit in 2021 and 2022.

35.     Eschenfelder operated its illegal boulder extraction operation on the property in 2021 and in 2022 before the County eventually issued it the permit on August 19, 2022. The County did not require Eschenfelder to pay any fines for violating County code or for operating without a permit.

36.     The County's decision to issue the permit was improper because the permitted conduct violates the County code for permissible uses in a mountain zone.

37.     Further, the permit was meaningless because a grading permit would not authorize Eschenfelder to operate a boulder extraction operation in a mountain zone.

***Eschenfelder has continued to extract boulders in violation of the County Code.***

38.     More recently, in or around June and July 2023, David witnessed Eschenfelder restart its illegal boulder extraction operation.

39.     David witnessed large, commercial trucks traveling on the development's small dirt roads going in and out of the property transporting large boulders. The trucks kicked up dust and dirt for hours each day, displaced vegetation, ruined roads, and generally caused a disturbance and nuisance.

40.     David then witnessed trucks hauling large boulders off the property and driven to a nearby subdivision and sold.

41.     The illegal operation has caused extensive harm, including removal of hundreds of trees, wildflowers, and other mountain vegetation, significant damage to roads and drainage systems, erosion of the soil, pollution of streams, dust pollution, noise pollution, and the growth of noxious weeds. David notified the County that the illegal operation had restarted.

42.     The County did not respond to David regarding his communications.

43.     In July 2023, the County issued a Notice of Violation to Eschenfelder relating to its continuing work at the property without a permit.

44.     Then, sometime in August 2023, the County "extended" Eschenfelder's 2022

grading permit.

45.     The County presumably did not require Eschenfelder to pay a permit fee for the 2023 permit or require any additional mitigation for the continuing damage it was causing. Additionally, the County did not require Eschenfelder to pay any fines associated with the earlier Notice of Violation for operating without a permit in June and July 2023.

46.     David continued to communicate with the County that Eschenfelder's activities were continuing in 2024. Upon information and belief, the County did not issue Eschenfelder a permit in 2024, or charge it a fine for violating County code for operating without a permit.

47.     In all, Eschenfelder operated without a permit in 2021, 2022, 2023, and 2024, and the County was aware of these operations.

48.     David communicated with the County that, pursuant to its own rules and regulations, the Eschenfelder operation was not permitted in a Mountain Zone.

49.     Specifically, County code § 16:09:02 defines the permitted principal uses in a Mountain Zone, and such uses do not include commercial boulder extraction.

50.     Additionally, § 16:09:01 provides that all "[d]evelopment should be in harmony with mountain settings and adverse impacts shall be mitigated," including to "[p]revent soil erosion generated from excessive street and soil displacement," "[e]ncourage the protection of wildlife, plant life and groundwater[,]" and "[p]rotect the vegetation and aesthetic characteristics of the county canyons and mountains."

51.     Thus, illegal boulder extraction operation is antithetical to the stated purpose of the Mountain Zone.

52.     The County is responsible to ensure its rules and regulations are enforced for the

benefit of David's property and the adjoining public amenities, including enforcing fines and penalties imposed by code for violation of those rules and regulations. Additionally, the County is responsible to ensure property owners in violation of County rules and regulations mitigate any damage caused.

53.    Instead of regulating such activities and requiring permits where necessary, it is the policy, custom, and practice of the County to outsource its permitting responsibilities to outside firms. But by so doing, Defendants fail to properly supervise whether these outside firms are enforcing the County's rules and regulations.

54.    Even more, the County failed to appoint an Engineering Coordinator in 2022, as County code requires.

55.    To the extent Grabau was acting as such by default, Defendants failed to (1) inform County employees and contractors that Grabau was the Engineering Coordinator, (2) failed to properly supervise employees and contractors within the Engineering Office, and (3) failed to ensure that decisions followed the proper chain of command. Engineering Office staff and contractors would often make key decisions that County code required the Engineering Coordinator make, without Grabau's input or supervision.

56.    Here, Defendants failed to issue the proper permits for the boulder extraction operation on the adjoining property in 2023 and 2024. In fact, no such permits *could* be issued pursuant to County rules and regulations. Yet Defendants allowed such activities to continue.

57.    Additionally, Defendants failed to regularly monitor such activities, even when David made them aware of the issues.

58.    On June 16, 2023, David emailed Nathan Rosvall in the County Planning

Department to inquire whether the adjoining property owner had a permit to conduct the boulder extraction operation. Rosvall replied that the Planning Department had no active permits for the adjoining property, and that David should contact Defendant Foster in the County Engineering Department to inquire as to whether there were any active permits before filing an official complaint regarding the illegal operation.

59.     Rosvall told David that Eschenfelder had a business license. But County employees later told the State Records Committee that there were no county records relating to a business license.

60.     David has investigated the damage done to the roads in Brighton Estates related to the illegal boulder extraction operation and found it will cost at least $232,000 to mitigate the damage that has been done to the roads alone. That amount does not include the damage caused and resources required to mitigate issues relating to soil erosion, wildlife, plant life, vegetation, and groundwater that the extended illegal boulder extraction operation has caused to his property and his enjoyment of his property.

61.     Additionally, the large, commercial semi-trucks have irreparably damaged the small, dirt roads, in some instances causing potholes the entire width of the road.

***Defendants prevented David's exercise of free speech and retaliated against him for reporting Eschenfelder's violations of the County Code.***

<u>July 2022 Council Meeting</u>

62.     David attempted to exercise his free speech and access rights relating to the illegal boulder extraction operation multiple times.

63.     David attended and watched multiple Council meetings in order to witness

public comment periods. He witnessed other county residents voice their opinions on a myriad of issues during the public comment portion of previous County Council meetings for as long as 12 minutes without any complaint or direction to sit down from the County Council.

64.     Many of the public comment periods included robust, interactive back-and-forth conversations between the resident and Council members, with Council members asking the resident multiple questions during the resident's public comment time.

65.     Prior to the July 20, 2022 Council meeting, David emailed Council member M. Crittenden to request to speak at the meeting and make a presentation, including pictures and videos, regarding the illegal boulder extraction operation. M. Crittenden did not respond to David, nor did she forward David's request to other Council members.

66.     On July 20, 2022, David attended the Council meeting and attempted to speak about the illegal boulder extraction operation during the open public comment period. Defendant Nelson told David he was not on the agenda, did not permit David to complete his comments, cut him off, and told him to sit down.

67.     There was no public comment period policy included on the July 20, 2022 agenda or the Council's website, there had been no announcement related to the public comment period prior to the start of the meeting, and there had been no announcement related to the public comment period prior to the start of the public comment period.

68.     The Council had no written policy related to the public comment period.

69.     Nelson was unaware if the Council had a formal policy related to the public comment period, was unaware what the policy was, and did not follow the policy if the Council had one.

70.     After the meeting, Assistant County Manager Lefgren asked if David would email Lefgren the packet David handed out to the Council during David's public comment period. David emailed Lefgren his presentation on July 20, 2022, which included detailed photos and videos of the illegal boulder extraction operation being conducted by Eschenfelder.

71.     Just days later, Eschenfelder made a harassment complaint to local law enforcement with details strikingly similar to the details in the presentation David handed over to Defendants days earlier. A County law enforcement officer visited David at his property, bullied him, and attempted to escalate Eschenfelder's harassment complaint to a misdemeanor stalking charge.

72.     The officer failed to activate his body camera when interviewing employees at the Eschenfelder property, even though Sheriff's office policy and procedures required that he do so. The officer conveniently remembered to activate his body camera when interviewing David.

73.     Additionally, the officer's report failed to include David's report to the officer, including the fact that an Eschenfelder employee had approached David in the street to question him. The officer's report also failed to include the fact that the officer had inquired of the employees whether Eschenfelder had a permit for the operation. In other words, the officer's report was one-sided against David.

*August 2022 Council Meeting*

74.     David's July 20, 2022 email to Lefgren requested that Lefgren send David the Rules of Order for County Council meetings. Lefgren subsequently told David there were no such rules for County Council meetings.

75.     On August 3, 2022, prior to a County Council meeting, David overheard Grabau and Lefgren, on the phone with Nelson, discussing whether to allow David to speak during the open public comment period at the County Council meeting scheduled that day.

76.     Phone records between Nelson and Grabau have confirmed that this call took place; Lefgren has admitted he participated in this call on speaker phone while in Grabau's office.

77.     Lefgren has also admitted that while on the conspiratorial phone call, Nelson, Grabau, and Lefgren discussed limiting David's participation in the public comment portion of the Council meeting that was happening later that day.

78.     Later that day, David asked Grabau and Lefgren about the status of the boulder extraction operation. Grabau and Lefgren told David that the County was currently considering the permit for the operation. David then told Grabau and Lefgren that he intended to speak at the Council meeting and that his comments would likely last approximately eight minutes.

79.     At the Council meeting, David attempted to speak to the Council during the open public comment period concerning the illegal boulder extraction operation on the Eschenfelder property.

80.     Nelson quickly interrupted David, questioned him on the subject matter of his public comments, told him he had participated in the last month's public comment period, that he did not have permission to speak, to sit down, and tried to prohibit him from speaking.

81.     When David refused to stop speaking, Nelson, Chair of the Council, rose from his chair and left the dais. No other Council member attempted to stop Nelson, assure David he could continue, or mitigate Nelson's unconstitutional behavior in any way.

82.      Defendant Park, Vice Chair of the Council, took over to chair the meeting in Nelson's absence. Park told David there would be no interaction between David and the Council during David's public comment. When David finished his public comment and returned his seat, Nelson returned to the dais and resumed his leadership duties.

83.      There was no public comment period policy included on the August 3, 2022 agenda or the Council's website, there had been no announcement related to the public comment period prior to the start of the meeting, and there had been no announcement related to the public comment period prior to the start of the public comment period.

84.      Nelson was unaware if the Council had a formal policy related to the public comment period, was unaware what the policy was, and did not follow the policy if the Council had one.

85.      Park similarly was unaware if the Council had a formal policy related to the public comment period, was unaware what the policy was, and did not follow the policy if the Council had one.

86.      Shortly thereafter, Lefgren asked David to meet with him in Lefgren's office and told David that the Council could have called the Sheriff's office to have David removed from the Council meeting for speaking during the public comment period at the meeting. He then attempted to persuade David to pursue litigation against Eschenfelder instead of against the County and told David that if he was considering litigation against the County, Lefgren would not be willing to speak with him.

87.      The Council has never called the Sheriff's office to have anyone removed from a Council meeting for speaking during the public comment period at a meeting.

*February 2023 Council Meeting*

88.     On February 15, 2023, David again attempted to speak at a Council meeting to call for the resignation of Nelson, Grabau, and Lefgren for violating David's First Amendment rights at earlier meetings and for conspiring with each other to do so.

89.     At the February meeting Park, now Chair of the Council, attempted to limit David's right to fully address the Council as David intended. Despite no such policy or rule, and despite allowing other county residents to speak at will, as David was approaching the podium Park told David he could only have up to two minutes to speak.

90.     Park did not tell the resident after David at the February 15, 2023 Council meeting that his time would be limited to two minutes.

91.     There was no public comment period policy included on the February 15, 2023 Council agenda or the Council's website, there had been no announcement related to the public comment period prior to the start of the meeting, and there had been no announcement related to the public comment period prior to the start of the public comment period.

92.     Park was unaware if the Council had a formal policy related to the public comment period, was unaware what the policy was, and did not follow the policy if the Council had one.

**Defendants retaliate against David for exercising his free speech rights.**

93.     David sent Foster emails on June 16 and 30, 2023, and on July 1, 2023, stating that the illegal boulder extraction operation had started again and asking whether the adjoining neighbor had a permit to conduct such an operation.

94.     On information and belief, in retaliation for David's exercise of his free speech rights at the previous Council meetings, instead of providing David the requested information,

Defendant Foster delayed her response to David's emails and, when she finally did respond, stated that David would need to submit a GRAMA request to receive any information, despite the County having no such policy and responding differently to other residents' request for similar information.

95.    Similarly, David submitted GRAMA requests for other related information only to be told by Foster, Grabau, and other defendants that the County had no relevant records or that David would be charged an exorbitant amount to access such records.

96.    When David said he would appeal his requests to the State Records Committee, relevant records would suddenly become available or be produced when none had been produced before.

97.    County officials generally refused to answer David's questions, refused to even meet with him, failed to respond to his requests as a resident of the County, or sent him back and forth between county departments—like the Engineering Department and the Planning Department—to then claim that documents that did exist did not exist or were not available.

98.    When David asked to meet with Grabau concerning the illegal extraction operation, Grabau required that David email Grabau a list of items he wished to discuss, and then they could possibly meet to discuss the items. When other residents wished to meet with Grabau, however, Grabau would not require them to first email a list of topics before scheduling a meeting; Grabau would meet with other residents unless a scheduling conflict arose.

99.    Similarly, when other property owners in the county complain about lack of code enforcement in the County, they are not told to seek information through GRAMA requests, as the County required David to do here; rather, the County regularly coordinates

closely with complainants when investigating code enforcement complaints.

100.    In fact, the County specifically tells residents that county code enforcement works on a complaint basis and directs residents to fill out a complaint form on the County website. David completed a complaint form and emailed it to the County as well as to an email address forwarded to all Council members. David is not aware of any action taken by Defendants in response to his complaint.

101.    On information and belief, it was the custom, policy, and practice of Defendants to fail to keep pertinent records and then stonewall GRAMA requests for County records. Further, on information and belief, it was the custom, policy, and practice of Defendants to treat residents it thought were abusing the GRAMA system with particular disdain and animosity.

102.    On information and belief, it was the custom, policy, and practice of Defendants to subjectively decide who could and could not speak during the open comment periods at Council Meetings. Further, Nelson, Lefgren, and Grabau, on more than one occasion, refused to provide any rules of conduct for Council meetings when David requested them and told David that none existed.

103.    On information and belief, the lack of any such rules allowed Defendants, in practice and by custom, to tell individual residents they could or could not speak during meetings, as Defendants did to David, depending on the subject matter of the speech at issue, or the person speaking, without any objective standards.

104.    By these customs, policies, and practices, Defendants violated David's constitutional rights.

***Mental and Physical Effects of Defendants' Actions***

105.    Defendants' actions have taken a toll. After making his public comments on February

15, 2023, including the attempt to limit his participation, David experienced chest pains and was admitted to the Park City Intermountain Hospital. He was admitted for overnight observation. Later that year, David fainted in a restaurant in St. Louis and was taken to an emergency room where doctors again ran cardiac stress tests.

106.    Doctors implanted a cardiac monitor in August 2023.

107.    David's health issues have not demonstrated cardiac blockage or coronary heart disease; his issues are directly related to the stress induced by living next to a commercial operation for four years and the pressures of defending his own constitutional liberties against his local government entities.

***David submitted a Notice of Claim, which the County denied entirely.***

108.    Pursuant to Utah Code Ann. § 63G-7-401, David sent a Notice of Claim to Defendants on August 25, 2023. *See* Notice of Claim, attached as Exhibit A. In it, David described claims relating to the illegal boulder extraction operation in Brighton Estates as well as Defendants' violation of David's First Amendment free speech and access rights with regard to County employees during public comment periods during council meetings.

109.    The County responded to the Notice of Claim on October 26, 2023, and denied all allegations. *See* County Response Letter, attached as Exhibit B.

## FIRST CAUSE OF ACTION
(Declaratory Judgment)

110.    David incorporates by reference, and alleges in full, the allegations included in the foregoing paragraphs as if fully set forth herein.

111.    The County refuses to enforce its own rules, regulations, and ordinances on all property owners in the County, resulting in damage to David and David's property interests as

well as the surrounding property and public amenities, including roads, vegetation, and green

space. Additionally, the County has failed to require property owners to mitigate damage

where necessary pursuant to County rules, regulations, and ordinances.

113.    Therefore, an actual, justiciable controversy exists between David and the County

as to the County's failure to enforce its own rules and regulations relating to property code

compliance.

113.    Such failure to enforce its own rules and regulations has resulted in damage to

David and David's property.

114.    Accordingly, the requested relief is proper under 28 U.S.C. §§ 2201 and 2202.

115.    Pursuant to 28 U.S.C. §§ 2201 and 2202, David is entitled to a declaration that the

County is ordered to enforce its rules, regulations, and ordinances against all property owners,

and to require appropriate mitigation efforts where damage has occurred in prior violation of

those rules, regulations, and ordinances.

## SECOND CAUSE OF ACTION
(42 U.S.C. Section 1983: Violation of First Amendment Right to Free Speech)

116.    David incorporates by reference, and alleges in full, the allegations included in the

foregoing paragraphs as if fully set forth herein.

117.    Defendant Wasatch County is a political subdivision of the State of Utah.

118.    Defendants Sweat, Granger, Nelson, Farrell, K. Crittenden, Park, Searle,

Rowland, McMillan, Goode, Wade, M. Crittenden, Foster, Lefgren, and Grabau represent

Wasatch County in their official capacities as County Council members, elected officials, and

employees. David also sues Defendants Nelson, Park, Crittenden, Grabau, Lefgren, and Foster in

their individual capacities.

119.    The First Amendment to the U.S. Constitution provides that "Congress shall make no law … abridging the freedom of speech."

120.    The First Amendment is incorporated herein by the Fourteenth Amendment.

121.    Defendants, under color of state law, deprived David of his federal constitutional right to free speech when they limited his right to speak during Council meetings, failed to provide consistent, objective meeting rules, failed to publish clear, objective rules, failed to enforce their own rules, told him to sit down, attempted to limit his speaking time, and walked out of a public meeting during his public comment time.

122.    Defendants' policies and practices contributed to the violation of David's constitutional rights because they (1) failed to have objective rules for public comment periods, (2) failed to publish objective policies and procedures relating to public comment periods, (3) failed to understand their own policies and procedures relating to public comment periods, (4) failed to practically apply their policies relating to the public comment period in a fair and consistent manner regardless of which constituent was speaking, (5) failed to develop objective standards and policies to apply to public comment periods once David pointed out that none existed, (6) failed to provide training and supervision to council members regarding appropriate behavior by public officials during public comment periods, and (7) sought to retaliate against those residents they did not favor.

123.    Had there been objective policies in place related to the open public comment periods during Council meetings and had the County properly trained and supervised Council members on such policies, Defendants would not have violated David's rights.

124.    Wasatch County official policy, practice, and custom, and lack thereof, relating to

public comment periods during Council meetings deprived David of his First Amendment rights and have caused David damages in an amount to be proven at trial to which David is entitled pursuant to 42 U.S.C. § 1983 as well his attorney's fees incurred pursuant to 42 U.S.C. § 1988.

**THIRD CAUSE OF ACTION**
(Utah Constitution Art. I, Sec. 15 – Free Speech)

125.    David incorporates by reference, and alleges in full, the allegations included in the foregoing paragraphs as if fully set forth herein.

126.    Section 15 of Article I of the Utah Constitution provides that "[n]o law shall be passed to abridge or restrain the freedom of speech[.]"

127.    David sues Defendants in their official capacities as Council members, elected officials, and employees. David also sues Defendants Nelson, Park, Crittenden, Grabau, Lefgren, and Foster in their individual capacities.

128.    Defendants deprived David of his state constitutional right to free speech when they limited his right to speak during Council meetings, failed to provide consistent, objective meeting rules, failed to publish objective rules and policies, failed to understand their own rules and policies, told David to sit down, attempted to limit his speaking time, and walked out of a public meeting during his public comment time.

129.    Defendants further violated David's constitutional rights when they retaliated against him for attempting to exercise such rights by delaying their email and constituent responses, refusing to provide public documents, attempting to bully and intimidate him with criminal prosecution, and refusing to meet with him and engage with him professionally as they did with other constituents.

130.    Defendants' policies and practices contributed to the violation of David's constitutional rights because they (1) failed to have objective rules for public comment periods, (2) failed to publish objective public comment policies, (3) failed to understand their own public comment policies, (4) failed to practically apply their policies relating to the public comment period in a fair and consistent manner regardless of which constituent was speaking, (5) failed to develop objective standards and policies to apply to public comment periods once David pointed out that none existed, (6) failed to provide training and supervision to council members regarding appropriate behavior by public officials during public comment periods, and (7) sought to retaliate against those residents they did not favor.

131.    Had there been objective policies in place related to the open public comment periods during Council meetings and had the County properly trained and supervised Council members on such policies, Defendants would not have violated David's rights.

132.    Wasatch County official policy, practice, and custom, and lack thereof, relating to public comment periods during Council meetings deprived David of his state constitutional rights and have caused David damages in an amount to be proven at trial.

133.    David's right to speak at a county council meeting and the County's failure to provide consistent policies and practices related to such open public comment periods are clearly established constitutional rights such that the County's violation of them is flagrant.

134.    Existing remedies would not redress David's remedies, as even though some of the County's illegal behavior is continuing, the injuries associated with the violation of David's free speech rights have already occurred such that an injunction would be wholly inadequate to correct the wrongs caused by such violations.

## **FOURTH CAUSE OF ACTION**

(42 U.S.C. Section 1983: Retaliation for Exercise of First Amendment Rights)

135.    David incorporates by reference, and alleges in full, the allegations included in the foregoing paragraphs as if fully set forth herein.

136.    Defendant Wasatch County is a political subdivision of the State of Utah.

137.    Defendants Sweat, Granger, Nelson, Farrell, K. Crittenden, Park, Searle, Rowland, McMillan, Goode, Wade, M. Crittenden, Foster, Lefgren, and Grabau represent Wasatch County in their official capacities as County Council members, elected officials, and employees. David also sues Defendants Nelson, Park, Crittenden, Grabau, Lefgren, and Foster in their individual capacities.

138.    The First Amendment to the U.S. Constitution provides that "Congress shall make no law … abridging the freedom of speech."

139.    The First Amendment is incorporated herein by the Fourteenth Amendment.

140.    Defendants, under color of state law, retaliated against David's exercise of his federal constitutional right to free speech when they limited his involvement at Council meetings based on comments at previous meetings, stonewalled his legitimate requests to meet with County officials to discuss relevant matters, attempted to bully and intimidate him with criminal prosecution, and refused to engage with him professionally as they did with other constituents.

141.    Defendants further retaliated against him by delaying their email and constituent responses, refusing to provide public documents, and by stalling and/or altogether denying his requests for County records.

142.    As a result, David's speech was chilled, if not altogether stopped, his legitimate investigation of government activity obstructed, and his larger investigation rendered cost prohibitive.

143.    Upon information and belief, Defendants' adverse actions were motivated by David's constitutionally protected activities at the Council meetings and by his constituent communications with Defendants attempting to procure information related to the illegal boulder extraction operation.

144.    David is entitled to a judgment and order that Defendants' conduct, as described herein, constitutes retaliation under the law and a violation of 42 U.S.C. § 1983; an order restraining Defendants from further illegal conduct; and such order and further relief as the Court deems proper, including monetary damages in the amount of at least $500,000 and costs and attorney's fees under 42 U.S.C. § 1988.

## FIFTH CAUSE OF ACTION
(42 U.S.C. Section 1983: Civil Conspiracy to Violate Constitutional Rights)

145.    David incorporates by reference, and alleges in full, the allegations included in the foregoing paragraphs as if fully set forth herein.

146.    David sues Defendants in their official capacities as Council members, elected officials, and employees. David also sues Defendants Nelson, Park, Crittenden, Grabau, Lefgren, and Foster in their individual capacities.

147.    Defendants conspired and agreed among themselves to a wrongful action to deprive David of his civil rights.

148.    Specifically, Nelson and other Council members worked together to stop David from speaking during the open public comment period on July 20, 2022.

149.    Nelson's prior animus toward David prompted him to yell, denigrate, and prohibit David from completing his remarks at one public Council meeting, and to embarrass and completely shun him at another Council meeting. Nelson's justification—that David was not on the agenda and had appeared at a prior meeting—was irrational and telling in light of the fact that public comments are never on the agenda and there were no rules limiting residents to participate in repeat meetings.

150.    The rest of the Council acted with callous indifference to Nelson's atypical and bullying behavior toward David, a county resident who they had pledged to represent.

151.    Additionally, Nelson, Grabau, Lefgren, and possibly others had a conspiratorial telephone call before the Council meeting on August 3, 2022 to discuss whether they would allow David to speak during the open public comment period at the upcoming Council Meeting and whether they would limit the amount of time he could speak.

152.    At the meeting on August 3, Nelson attempted to stop David from speaking. Nelson left the council meeting thereby attempting to stop David from speaking during the open public comment period. Other Council members did nothing to stop Nelson, assure David he could participate, or otherwise mitigate Nelson's unconstitutional actions.

153.    Similarly, at the meeting on February 15, 2023, Park and the other Council members worked together to limit David from speaking during the public comment period to two minutes.

154.    No published or previously-announced public comment policy at the February 15, 2023 meeting stated that public comments would be limited to two minutes.

155.    Park did not attempt to limit the next resident's public comment period.

156.    Each of Defendants committed the unlawful, overt acts complained of herein, in furtherance of their conspiracy.

157.    David is entitled to a judgment and order that Defendants' conduct, as described herein, constitutes a civil conspiracy under the law and constitutes a violation of 42 U.S.C. § 1983; an order restraining Defendants from further illegal conduct; and such order and further relief as the Court deems proper, including monetary damages in the amount of at least $500,000 and costs and attorney's fees under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, David prays for relief against Defendants as follows:

1.    Declaratory relief necessary and proper for the Court to grant David the relief sought herein, including at least $240,000 in damages to mitigate injuries caused by the County's failure to enforce its own rules, regulations, and ordinances;

2.    That the Court award damages in favor of David against Defendants in excess of $500,000 as a result of Defendants' deprivation of David's constitutional rights, including attorney's fees and costs, in an amount to be proven at trial;

3.    That the Court award punitive damages against Nelson, Grabau, Lefgren, and other defendants sued in their individual capacity as a result of their malicious intention and/or reckless disregard for David's federally protected rights; and

4.    That the Court award David such other and further relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

David hereby requests trial by jury of all issues so triable in this case.

DATED this 11th day of March 2025.

**BUCHALTER**
**A Professional Corporation**


_/s/ Michelle Quist_____
Douglas P. Farr
Michelle Quist

_Attorneys for Plaintiff Lynn David_

## **TABLE OF EXHIBITS**

A – Notice of Claim

B – County Response Letter

# EXHIBIT A

*to First Amended Complaint & Jury Demand*



Michelle L. Quist
Of Counsel
**Phone** 801.799.5735
MLQuist@hollandhart.com
116290.0003

August 25, 2023

**DELIVERED VIA CERTIFIED MAIL
AND ELECTRONIC MAIL**

Mr. Scott Sweat
Wasatch County Attorney
805 West 100 South
Heber City, Utah 84032
(435) 654-2909
*attorney@wasatch.utah.gov*

Ms. Joey D. Granger
County Clerk-Auditor
25 North Main
Heber City, Utah 84032

Mr. Mark Nelson
Mr. Steve Farrell
Mr. Kendall Crittenden
Mr. Spencer Park
Mr. Luke Searle
Mr. Erik Rowland
Mr. Karl McMillan
Wasatch County Council Members
25 North Main
Heber City, Utah 84032

Ms. Natalie Foster
Administrative Assistant
Mr. Dustin Grabau
Wasatch County Manager
25 North Main
Heber City, Utah 84032

**Re:      Notice of Claim**

TO WHOM IT MAY CONCERN:

**Location**
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194

**Contact**
p: 801.799.5800  |  f: 801.799.5700
www.hollandhart.com

Holland & Hart LLP   Anchorage   Aspen   Billings   Boise   Boulder   Cheyenne   Denver   Jackson Hole   Las Vegas   Reno   Salt Lake City   Santa Fe   Washington, D.C.



August 25, 2023
Page 2

Holland & Hart LLP represents Mr. Lynn David. On his behalf, I am serving this Notice of
Claim ("Notice") pursuant to the Governmental Immunity Act of Utah, Utah Code Ann. § 63G-
7-401 ("GIA").

## I.    Statement of Facts.

Mr. David owns property in Brighton Estates, Wasatch County (the "County"). Mr. David has
recently witnessed BRBE, LLC ("BRBE") and Eschenfelder Landscaping illegally operating a
commercial boulder extraction operation in Brighton Estates on parcels 00-0000-2878 and 00-
0000-2613 (2399 West Boulder Drive, Midway). BRBE submitted a permit application with
Wasatch County regarding its activities in Brighton Estates. However, in its Grading Permit
Application filed with Wasatch County on June 9, 2022, BRBE describes the scope of work as
follows: "Continue the Grading of a road for future development." That statement regarding the
scope of work was, and is, incorrect, and Mr. David has recently witnessed BRBE operating an
illegal commercial boulder extraction operation. The County is aware of this and has allowed it.

Despite the property owner's failure to secure a permit for its boulder extraction and grading
activities, the County failed to enforce numerous County regulations or violations of those
regulations relating to the mountain zone in which Brighton Estates is located and continues to
do so. Commercial rock mining is not permitted in a mountain zone, *see* Wasatch County Code
16:09:02, and the County is responsible to ensure that property owners are responsible to stop
their illegal activities and repair the damage already caused. Most importantly, all adverse
impacts from any development activity related to properties located in mountain zoning must be
mitigated. *See* Wasatch County Code 16:09:01. Yet the County has refused to require property
owners to perform any mitigation of their extensive damages caused by these activities or even
require owners to secure basic permits for their activities. These failures have caused damage.

Through negligent and malfeasant operation of its Engineering Department, the County has
failed to stop BRBE's illegal activities. Indeed, it is the policy, custom, and practice of the
County to outsource its permitting responsibilities to outside firms, including Ardurra. By so
doing, the County, including Ms. Foster, Mr. Grabau, and the entire County Council, has failed
to supervise whether its own County regulations are being enforced. In fact, they are not.

Additionally, when Mr. David attempted to discuss the issue with the County Council, he was
either stopped or severely limited in his ability to do so, thereby violating his rights to fully
exercise his right to address the County Council. Mr. David has noted it is the County Council's
pattern and custom to limit a citizen's right to address the Council when the Council does not
want to hear what that citizen has to say. At one point, Mr. Nelson yelled at Mr. David to stop
talking, got up from his seat while the meeting was still going, and left the dais until Mr. David
finished his public comments. Given multiple meetings involving such behavior toward Mr.
David, it appears that the County does not train and/or supervise its Council members on proper
public comment periods during council meetings.

# Holland & Hart

August 25, 2023
Page 3

## II.    Nature of Claims Asserted.

Mr. David seeks a declaratory judgment that the County and its employees have failed to enforce the County's rules and regulations as written and that such failures have damaged Mr. David, his property, as well as neighboring properties in Brighton Estates in an amount no less than $240,000.

Additionally, Mr. David intends to bring First Amendment claims that the County and its employees have violated his free speech and access rights during county council meetings.

Finally, Mr. David requests an injunction to require the County and its employees to enforce County permitting regulations as written in order to protect property for all citizens in the County.

## III.    Damages Incurred.

Mr. David seeks declaratory judgment, injunctive relief, and damages to restore the property to its previous condition. The County's permissive behavior toward other property owners in Brighton Estates, and its failure to enforce its own laws, ordinances, and regulations, has caused extensive harm, including the removal of hundreds of trees, wildflowers, and other mountain vegetation, significant damage to roads and drainage systems, erosion of the soil, pollution of streams, dust pollution, noise pollution, and the growth of noxious weeds. Upon information and belief, Mr. David believes such damages amount to no less than $240,000.

Regards,

*/s/ Michelle Quist*

Michelle Quist
Of Counsel
for Holland & Hart LLP

cc: Cory A. Talbot

30244581_v5

# EXHIBIT B

## *to First Amended Complaint & Jury Demand*

# WASATCH COUNTY ATTORNEY

SCOTT H SWEAT
COUNTY ATTORNEY

805 West 100 South
Heber City, Utah 84032
Telephone (435) 654-2909
Facsimile  (435) 654-2947

MCKAY G KING
S. CASE WADE
JON WOODARD
MICHAEL A. SNELL
SHELBY M. THURGOOD
ALEX D. STOEDTER

October 26, 2023

Michelle L. Quist
Holland & Hart
222 South Main Street, Suite 2200
Salt Lake City, Utah 84101-2194
MLQuist@hollandhart.com

Re: Notice of Claim on behalf of Lynn David

Dear Ms. Quist:

This letter is to inform you, pursuant to Utah Code section 63G-7-403, that your letter regarding a Notice of Claim on behalf of Mr. Lynn David, Dated August 25, 2023, was received by Wasatch County.

All factual allegations and claims are denied.

Sincerely,

Shelby M. Thurgood
Deputy County Attorney
Wasatch County Attorney's Office

**WASATCH COUNTY ATTORNEY**
805 West 100 South
Heber City, Utah 84032

SALT LAKE CITY UT 840

31 OCT 2023 PM 1 J



RECEIVED

NOV 0 2 2023

Holland & Hart LLP.

Michelle L. Quist
Holland & Hart
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194

84101-219450