UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| LYNN DAVID, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WASATCH COUNTY, UTAH, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR SANCTIONS (DOC. NOS. 96 & 97)**<br><br>Case No. 2:24-cv-00215<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

Lynn David brought this action against Wasatch County, Utah, and various county councilmembers and employees, alleging they allowed an illegal boulder extraction operation adjacent to his property and retaliated against him for reporting and complaining about it.[1]  He asserts claims for violations of his free speech rights, civil conspiracy, retaliation, and declaratory judgment.[2]  Now, near the close of discovery, Mr. David files two overlapping motions for sanctions.  Primarily, he moves for default judgment based on the defendants' failure to obey a prior discovery order.[3]  Separately, Mr. David moves for default judgment based on spoliation, arguing the defendants deleted text messages with the intent to deprive him of information relevant to this

---

[1] (*See* Am. Compl. ¶¶ 1–3, 28–29, Doc. No. 84.)

[2] (*Id.* ¶¶ 1–3, 110–57.)

[3] (Pl. Lynn David's Mot for Default J. as Disc. Sanction (Default J. Mot.), Doc. No. 96.)

1

case.[4]  The defendants oppose both motions, arguing the sanctions Mr. David seeks

are unjustified.[5]  The court held a hearing on the motions on March 9, 2026.[6]

Each of Mr. David's motions is granted in part and denied in part.  Because the

defendants failed to comply with the court's prior discovery order and spoliated

evidence, sanctions are warranted—but not the severe sanctions Mr. David requests.

However, should the defendants continue to disobey the court's orders, or should

further evidence of spoliation surface, more severe sanctions may be appropriate.

### BACKGROUND

According to the complaint, nonparties BRBE, LLC and William Eschenfelder

have operated an illegal boulder extraction operation adjacent to Mr. David's house

since 2021.[7]  The defendants have refused to enforce the county's rules and regulations

requiring these nonparties to obtain appropriate permits for the operation.[8]  And Mr.

David has attempted to raise his concerns about the operation with the county, including

at various county council meetings.[9]  Relevant here are four council meetings in

particular and several individual defendants—councilmembers Mark Nelson, Spencer

---

[4] (Pl. Lynn David's Mot. for Spoliation Sanctions (Spoliation Mot.), Doc. No. 97.)

[5] (Opp'n to Default J. Mot., Doc. No. 104; Opp'n to Spoliation Mot., Doc. No. 103.)

[6] (*See* Minute Entry, Doc. No. 116.)

[7] (Am. Compl. ¶ 28, Doc. No. 84.)

[8] (*Id.* ¶ 29.)

[9] (*Id.* ¶¶ 62–92.)

Park, Marilyn Crittenden, Luke Searle, and Jeff Wade, and county employees Dustin Grabau, Heber Lefgren, Natalie Foster, and Joey Granger.

<u>Council Meetings</u>

On July 20, 2022, Mr. David attended a county council meeting.[10]  Mr. Nelson (Chair of the Council), Mr. Lefgren, and others were present.  During the public comment period, Mr. David attempted to give a presentation on the extraction operation. Mr. Nelson told him it was inappropriate because the matter was not on the council's agenda.  Mr. David explained he had emailed Ms. Crittenden beforehand.  She and other council members noted they were unaware of this, but they would consider the matter and get back to Mr. David.[11]

On August 3, 2022, the council held another public meeting.  Mr. David alleges that, during a phone call ahead of this meeting, Mr. Lefgren, Mr. Grabau, Mr. Nelson, and Mr. Park conspired to prevent him from speaking about the extraction operation.[12] During the meeting's public comment period, Mr. Nelson attempted to stop Mr. David

---

[10] (*Id.* ¶ 66.)

[11] Mr. David cites to the archival recordings of public council meetings on the county's website.  (Ex. A to Default J. Mot., Decl. of Michelle Quist (Quist Decl.) ¶ 36, Doc. No. 96-1.)  A recording of this July meeting is publicly available, including Mr. David's comments and dialogue with the council members.  *See* Wasatch County, UT, Agendas & Minutes, County Council Regular Meeting (July 20, 2022), https://wasatchcout.portal.civicclerk.com/event/268/media.  The defendants also filed the recording of this meeting with the court.  (*See* Exs. A–C to Answer, Doc. No. 44.)

[12] (Am. Compl. ¶¶ 74–87, Doc. No. 84.)

from speaking, then left when Mr. David refused.[13]  Mr. Park (Vice Chair) took over.[14]

Mr. Nelson, Mr. Grabau, and Mr. Lefgren can be seen holding their cellphones at this

meeting.[15]

The council held another meeting on February 15, 2023, and Mr. David spoke

during the public comment period.[16]  In addition to raising concerns about the extraction

operation, Mr. David explained that he believed the council had previously violated his

free speech rights.[17]

Roughly six months later, on August 2, 2023, councilmembers and county

employees convened to discuss an automatic deletion policy for communications on

county-issued cellphones.[18]  The council ultimately implemented a 30-day auto-deletion

policy that applied to "all text messages and instant messages sent or received by

---

[13] (*Id.* ¶¶ 80–81.)

[14] (*Id.* ¶ 82.)

[15] The defendants filed a recording of this meeting with the court, which Mr. David references in his motion.  (*See* Exs. A–C to Answer, Doc. No. 44; Default J. Mot. 12, Doc. No. 96.)  The video is also publicly available on the same website Mr. David provided.  *See* Wasatch County, UT, Agendas & Minutes, County Council Regular Meeting (Aug. 3, 2022), https://wasatchcout.portal.civicclerk.com/event/276/media.

[16] (Am. Compl. ¶ 88, Doc. No. 84.)

[17] The defendants provide a transcript of Mr. David's comments at this February 2023 council meeting.  (Ex. E to Decl. of Jonathan Stearmer in Supp. of Opp'n to Default J. Mot., Doc. No. 104-1.)  The meeting is also publicly available on the website Mr. David provided.  *See* Wasatch County, UT, Agendas & Minutes, County Council Regular Meeting (Feb. 15, 2023), https://wasatchcout.portal.civicclerk.com/event/122/media. The defendants also filed the recording of this meeting with the court.  (*See* Exs. A–C to Answer, Doc. No. 44.)

[18] (Quist Decl. ¶¶ 34–36, Doc. No. 96-1.)

county employees."[19]  During this meeting, the county's deputy attorney stated: "We can't provide in discovery what we don't have, but if a case is pending, we have to save everything related to it."[20]

A few weeks later, on August 25, Mr. David's attorney sent the defendants a notice of claim, indicating his intent to sue.[21]  He filed this case many months later, on March 22, 2024.[22]  Apparently, the defendants did not issue any "litigation hold" notices or related communications after receiving the notice of claim.[23]  And the council's orientation packets from 2022 through 2024 did not include any instructions on retaining electronic communications for litigation.[24]

---

[19] (*Id.* ¶¶ 34–35 (citing Ex. 5 to Quist Decl., County Record Retention Schedules, Doc. No. 96-1 at 39).)  This order refers to the CM/ECF pagination for the parties' exhibits and briefing where they lack uniform page numbers.

[20] This August 2, 2023 meeting is publicly available.  The county attorney's full statement is at 35:00–35:14.  *See* Wasatch County, UT, Agendas & Minutes, County Council Regular Meeting (Aug. 2, 2023), https://wasatchcout.portal.civicclerk.com/event/274/media.

[21] (Ex. A to Am. Compl., Doc. No. 84-1.)

[22] (Compl., Doc. No. 1.)

[23] (Quist Decl. ¶ 39, Doc. No. 96-1 (citing Ex. 7 to Quist Decl., Defs.' Resp. to RFP 19, Doc. No. 96-1 at 64); Ex. F to Spoliation Mot., Defs.' Resp. to RFP 19, Doc. No. 97-6 at 9.)

[24] (Quist Decl. ¶ 38, Doc. No. 96-1 (citing Ex. 6 to Quist Decl., Doc. No. 96-1 at 44–55).)

<u>March 2025 Discovery Order</u>

In December 2024, one month after serving his first set of discovery requests, Mr. David sent the defendants a letter regarding deficiencies in their responses.[25]  After efforts to resolve the issues failed, Mr. David moved to compel, arguing (in part) that the defendants' responses to his requests for production (RFPs) 1, 2, 3, 5, 7, and 10 through 13 were inadequate.[26]  These requests sought documents and communications from January 1, 2020 to the present relating to: interrogatory responses (RFP 1), Mr. David (RFP 2), the county's policies, guidelines, rules, or procedures (RFP 3), complaints to the county (RFP 5), the nonparties involved with the extraction operation (RFP 7), council meetings (RFP 10), inspection of the extraction operation property (RFP 11), and this litigation (RFPs 12 and 13).[27]

On March 27, 2025, the court issued an order granting Mr. David's request to compel supplemental responses to these RFPs.[28]  The court explained that Mr. David argued the defendants had failed to produce all responsive documents, producing "only one communication authored by a councilmember, no communications between councilmembers, no texts, and no communications with the property owner in 2023 or

---

[25] (*Id.* ¶ 3 (citing Ex. 1 to Quist Decl., Doc. No. 96-1 at 14–18).)

[26] (Pl. Lynn David's Short Form Disc. Mot. to Compel Defs.' Doc. Produc. and Req. for Sanctions (Mot. to Compel), Doc. No. 64.)

[27] (*See* Ex. A to Mot. to Compel (Pl.'s First Set of Disc. Reqs.), Doc. Nos. 64-1; Ex. C to Mot. to Compel (Defs.' Second Am. Resps. to Pl.'s First Set of Disc. Reqs.), Doc. No. 64-3.)

[28] (Order Granting in Part & Denying in Part Pl.'s Short Form Disc. Mot. (March 2025 Disc. Order), Doc. No. 74.)

2024."[29]  And Mr. David noted individual defendants testified they had not searched their phones for responsive documents, and one councilmember defendant testified he maintained an autodelete feature on his phone which had deleted text messages as recently as December 2024.[30]  Notably, however, the parties did not dispute the time period for the requests—January 1, 2020 to the present.

> Before awarding attorney's fees, the court ruled as follows:

> Mr. David's assertions are borne out by the deposition testimony, which reveals Defendants' response to these RFPs to be wholly inadequate. Several defendants testified they used personal devices and email accounts for county business but were not asked to—and did not—search those devices or accounts for responsive documents.  Further, it strains credulity that the county devices which *were* searched contain no responsive documents in the categories Mr. David has identified, such as communications from councilmembers and communications with the property owner.  Under these circumstances, it is apparent the search of county devices for responsive documents was also inadequate.[31]

The court ordered the parties to "meet and confer regarding search terms to be applied to county and personal devices by April 8, 2025."[32]  And the court explicitly ordered: "Defendants shall perform a renewed search and produce *all* responsive documents by April 25, 2025."[33]

---

[29] (*Id.* at 3.)

[30] (*Id.*)

[31] (*Id.* at 4.)

[32] (*Id.*)

[33] (*Id.* (emphasis added).)

<u>Subsequent Productions</u>

The parties conferred and agreed to 35 search terms on April 8, 2025.[34]  But the defendants did not produce all responsive documents by the April 25 deadline.[35]  They produced just 251 documents.[36]  According to Mr. David, many were repeats of previously-produced documents, and documents for most of the requests were still missing—including documents relating to engineering contracts and invoices (RFP 1), Mr. David (RFP 2), the county's policies, rules, and procedures related to its comment policy for council meetings (RFP 3), emails sent to the county's Complaint Hot Line (RFP 5), the extraction operation property owners and related licenses (RFP 7), documents related to council meetings discussing Mr. David (RFP 10), inspections at the boulder extraction property (RFP 11), and communications related to this litigation (RFPs 12 and 13).[37]  And the April 25 production included only three truncated and incomplete text messages.[38]

The parties attempted to confer over the following two months without success. The defendants rescheduled the first conference.[39]  Then they hired new counsel in

---

[34] (Quist Decl. ¶ 4, Doc. No. 96-1; Opp'n to Default J. Mot., Doc. No. 104 at 4–13 (listing agreed-upon search terms).)

[35] (Quist Decl. ¶ 5, Doc. No. 96-1.)

[36] (*Id.* ¶ 6.)

[37] (*Id.* ¶¶ 5–6.)

[38] (*Id.* ¶ 8 (citing Ex. 2 to Quist Decl., Doc. No. 96-1 at 20–22).)

[39] (*Id.* ¶ 10.)

mid-May 2025, who needed to get "up to speed on the case."[40]  In June 2025, the

parties discussed the search terms again, and the defendants' new counsel asked for

the previously agreed-to terms.[41]  New counsel said they would talk to their clients and

initiate the search, and they anticipated having documents to produce by July 23,

2025.[42]  But the defendants did not produce documents by July 23.  Instead, they

provided a range of excuses over the next few months—including counsels' need to

orient themselves with the "voluminous records" in the case, a lack of "bandwidth,"

vacations, and difficulty connecting with their clients.[43]  According to the defendants,

they "underestimated the sheer size" of the search using the agreed-upon terms, "which

produced over 50GB of information."[44]

The defendants then made two more productions in response to the court's

March 2025 discovery order.  In September, they produced 105 pages, with only a

handful of new documents.[45]  And in October, they produced 404 pages—390 of which

---

[40] (*Id.* ¶¶ 11–13.)

[41] (*Id.* ¶ 14.)

[42] (*Id.* ¶ 16; Decl. of Jonathan Stearmer in Supp. of Defs.' Opp'n to Mot. for Default J. (Stearmer Decl.) ¶ 12, Doc. No. 104-1.)

[43] (Quist Decl. ¶¶ 17–18, Doc. No. 96-1.)

[44] (Stearmer Decl. ¶ 13, Doc. No. 104-1.)  At the hearing, the defendants represented they have roughly 13GB of documents left to review.

[45] (Quist Decl. ¶ 20, Doc. No. 96-1.)

were duplicative.[46]  Although they promised more documents were coming, the defendants did not produce any more.[47]

Significantly, the defendants unilaterally changed the time period for the productions resulting from the March 2025 discovery order.  The RFPs at issue in the order sought documents and communications from January 1, 2020, to present.[48] Despite never objecting to this timeframe (and even referring to it) in their discovery responses,[49] the defendants chose to limit the RFPs to a 42-day period: July 13 to August 10, 2022, and February 8 to February 22, 2023.[50]  They did so without Mr. David's assent or the court's approval.[51]  They unilaterally applied this timeframe

---

[46] (*Id.*)  The defendants note that they also produced 202 pages of cellphone records on August 6 in response to the court's separate discovery order (issued in December 2024), ordering the defendants to produce documents in response to RFP 9.  (Stearmer Decl. ¶ 14, Doc. No. 104-1; Quist Decl. ¶ 19, Doc. No. 96-1 (citing Order Granting in Part & Denying in Part [Pl.'s] Short Form Disc. Mot. to Compel Defs.' Doc. Produc. (Dec. 2024 Disc. Order), Doc. No. 62).)  Notwithstanding the substantial delay in producing documents for RFP 9, this discovery request is not at issue here.

[47] (Quist Decl. ¶¶ 29, 33, Doc. No. 96-1.)  At the hearing, Mr. David represented that the defendants produced text messages from Mr. Granger in February 2026, shortly before his deposition.  Mr. David also represented that the defendants made another production the day of the hearing.  Evidence of these productions is not provided with the present motions.

[48] (Pl.'s First Set of Disc. Reqs. 7, Doc. No. 64-1.)

[49] (Defs.' Second Am. Resps. to Pl.'s First Set of Disc. Reqs. 9–12, Doc. No. 64-3.)

[50] (Quist Decl. ¶ 23, Doc. No. 96-1 (citing Ex. 4 to Quist Decl., Conferral emails, Doc. No. 96-1 at 30).)

[51] The defendants notified Mr. David of this timeframe change after their April and September productions and two days before their October production.  (Stearmer Decl. ¶ 10, Doc. No. 104-1.)  Mr. David responded that same day, noting he had raised this issue in July 2025 and would "be filing an OSC motion with the court if [the defendants]

because, in a different discovery order, the court limited the timeframe applicable to a different RFP in a similar manner.[52]

The defendants' productions have only included three text messages and, to date, the defendants have not provided a privilege log.[53]  According to Mr. David, the defendants "have adopted a policy to not produce communications relating to responsive documents."[54]  The defendants do not dispute this or the fact that they have produced only three texts.  One text appears to be between Mr. Nelson and Mr. Park, but Mr. Park has not produced the same message.[55]  Whether the defendants lost that text or whether it is among the substantial number of documents they have withheld is

---

did not confirm that [they] are producing documents as ordered."  (Ex. 4 to Quist Decl., Doc. No. 96-1 at 30.)

[52] (Stearmer Decl. ¶ 9, Doc. No. 104-1.)  As noted above, the court issued an order in December 2024 compelling the defendants to produce documents in response to Mr. David's RFP 9, which is not at issue here.  RFP 9 sought "business telephone records between" Mr. Nelson, Mr. Grabau, Mr. Lefgren, Mr. Park, Ms. Crittenden, and Ms. Foster.  (Pl.'s First Set of Disc. Reqs. 11, Doc. No. 64-1.)  The court found the timeframe for RFP 9 was overbroad and imposed the more limited period Mr. David had suggested, stating: "RFP 9 could be limited to a week before and after three specific council meetings held on July 20, 2022, August 3, 2022, and Feb 15, 2022."  (Dec. 2024 Disc. Order 2–3, Doc. No. 62.)  The RFPs here are distinct and the parties have raised no issue with the relevant timeframe.

[53] (Quist Decl. ¶ 47, Doc. No. 96-1 (citing Ex. 2 to Quist Decl., Text Messages, Doc. No. 96-1 at 20–22); *see also id.* ¶ 27 (declaring the defendants have not provided a privilege log); Stearmer Decl. ¶ 15, Doc. No. 104-1 (same).)

[54] (*Id.* ¶ 25.)

[55] (*Id.* ¶¶ 47–48 (referencing Ex. 2 to Quist Decl., Doc. No. 96-1 at 20–21).)

unclear—the defendants have elected to not produce a privilege log until they complete production.[56]

Deleted Text Messages

Finally, some individual defendants have deleted potentially relevant texts from their phones.[57] For instance, Mr. Grabau admitted to deleting text messages from his county-issued phone.[58] On August 2, 2023, when the county implemented its automatic deletion policy, Mr. Grabau set his phone "to a 30-day automatic deletion."[59] He did not turn off the automatic deletion, to preserve texts for this litigation, until December 2024—at least fifteen months after Mr. David sent the county his notice of claim, and eight months after he filed this action.[60]

Mr. Lefgren also potentially deleted relevant texts. He recalls "possibly [having] a text exchange with the County Manager requesting permission to speak in person with [Mr.] David during a Council Meeting, which was given."[61] He states that, until "very recently," his "phone was set for automatic deletion of all texts after one year, which

---

[56] (*Id.* ¶ 27; Stearmer Decl. ¶ 15, Doc. No. 104-1.)

[57] (Quist Decl. ¶¶ 41–45 (citing Ex. 8 to Quist Decl. (Defs.' July 2025 Disc. Resps.), Doc. No. 96-1 at 67–72); Ex. G to Spoliation Mot. (Defs.' July 2025 Disc. Resps.), Doc. No. 97-7.) Mr. David provides much of the same evidence in support of both of his motions. This order references duplicate exhibits only where necessary.

[58] (Ex. G to Spoliation Mot., Defs.' July 2025 Disc. Resps. 3, Doc. No. 97-7.)

[59] (*Id.*)

[60] (*Id.* at 3–4.)

[61] (*Id.* at 3.)

means if [he] texted with the County Manager regarding meeting with [Mr.] David, those texts may have been deleted after the policy was adopted."[62]  The defendants conceded in their July 2025 discovery responses that Mr. Lefgren only "very recently" disabled his phone's one-year auto-deletion setting.[63]

In various manners, texts were also deleted from Mr. Searle's, Mr. Wade's, and Ms. Crittenden's phones.  The county wiped Mr. Searle's phone in October 2024 when it was stolen, although he has used his personal phone since and "has not deleted any County-related text messages during the relevant time frame."[64]  Mr. Wade, who left the county council in 2022, deleted all county-related text messages from his phone "some time in 2023."[65]  And Ms. Crittenden, who served on the council until 2022, states her phone provider was unable to save her texts when she switched mobile plans in December 2022.[66]

## DISCUSSION

Mr. David now moves for default judgment, alternative sanctions, and attorney's fees due to the defendants' failure to comply with the court's prior discovery order. Separately, he moves for default judgment and attorney's fees for the defendants' spoliation of electronically stored information.  Each motion is discussed in turn.  In

---

[62] (*Id.*)

[63] (*Id.*)

[64] (*Id.* at 4–5.)

[65] (*Id.* at 5.)

[66] (*Id.*)

short, Mr. David fails to justify the severe sanctions he seeks, but certain sanctions are warranted at this time.

### A. Failure to Comply in Discovery

First, Mr. David moves for default judgment under Rule 37(b)(2) of the Federal Rules of Civil Procedure, arguing the defendants willfully failed to comply with the court's March 2025 discovery order.[67]  He also seeks several other forms of sanctions for the defendants' failure, including adverse factual findings, an order prohibiting the defendants from introducing evidence, an order to show cause why they should not be found in contempt, and attorney's fees.[68]  In response, the defendants contend they did not disobey the court's discovery order and, even if they did, default judgment is unjustified.[69]  The defendants do not respond to Mr. David's request for other forms of sanctions, and only briefly note (in a single sentence) that they should be awarded attorney fees for having to respond to this motion.[70]

As explained below, Mr. David has only justified attorney's fees at this time.  But because the defendants' noncompliance here is concerning, the court may revisit the propriety of more severe sanctions in the future, if necessary.

---

[67] (Default J. Mot. 13–18, Doc. No. 96.)  Mr. David also seeks default judgment under Rule 37(e), arguing the defendants spoliated evidence.  (*Id.* at 18–21.)  This is more appropriately addressed with his motion for spoliation sanctions.

[68] (*Id.* at 21–24.)

[69] (Opp'n to Default J. Mot., Doc. No. 104 at 8–13.)  Because the defendants' brief does not include page numbers, this order refers to the CM/ECF pagination.

[70] (*Id.* at 2.)

*1. Legal Standards*

Under Rule 37(b)(2)(A), if a party "fails to obey an order to provide or permit discovery," courts "may issue further just orders."[71]  Such orders may include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims"; "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; entering "default judgment against the disobedient party"; or "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."[72]

Before imposing severe sanctions (such as dismissal or those with similar force and effect) for failure to obey a discovery order under Rule 37(b)(2)(A), courts consider several factors, generally known as the *Ehrenhaus* factors.[73]  These include: "(1) the degree of actual prejudice to the other party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for its noncompliance;

---

[71] Fed. R. Civ. P. 37(b)(2)(A).

[72] Fed. R. Civ. P. 37(b)(2)(A)(i), (ii), (vi), (vii).

[73] *See HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1203 (10th Cir. 2017); *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992); *see also Derma Pen, LLC v. 4EverYoung Ltd.*, 736 F. App'x 741, 745 (10th Cir. 2018) (unpublished) (holding courts should consider the *Ehrenhaus* factors before imposing default judgment).

and (5) the efficacy of lesser sanctions."[74]  These factors are not exhaustive, nor are they necessarily of equal weight.[75]

Ultimately, when a party fails to obey a discovery order, courts must impose attorney's fees unless certain exceptions apply.  Rule 37(b)(2)(C) provides that, "[i]nstead of or in addition to" the orders available under Rule 37(b)(2)(A), courts "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."[76]

### 2. Failure to Obey Discovery Order

As a threshold matter, the defendants failed to obey the court's March 2025 discovery order by not producing all documents responsive to RFPs 1, 2, 3, 5, 7, 10, 11, 12, and 13 by April 25, 2025.  The defendants only produced 251 documents by that date.[77]  Many were repetitive of prior productions, and documents responsive to several requests were still missing.[78]  The defendants produced an additional 105 pages in

---

[74] *Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005) (citation modified).

[75] *See Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005); *see also Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011) ("The *Ehrenhaus* factors are simply a non-exclusive list of sometimes-helpful 'criteria' or guide posts the district court may wish to 'consider' in the exercise of what must always remain a discretionary function.").

[76] Fed. R. Civ. P. 37(b)(2)(C).

[77] (Quist Decl. ¶ 6, Doc. No. 96-1.)

[78] (*Id.* ¶¶ 5–6.)  The defendants do not contest these facts.

September, which only included a handful of new documents, and 404 pages in October, ninety-six percent of which was duplicative.[79]  At the hearing, the defendants stated more documents are still to come, tacitly admitting they still have not complied with the court's order.

The defendants claim they underestimated the volume of the documents that would be recovered in the renewed search.  But they also admit they unilaterally changed and applied a significantly shorter timeframe for the search—a 42-day period, rather than the five-year period requested.[80]  Specifically, RFPs 1, 2, 3, 5, 7, and 10 through 13 identify January 1, 2020 to the present as the relevant time period.[81]  The defendants did not object to this timeframe in their discovery responses or their opposition to Mr. David's motion to compel.[82]  The March 2025 discovery order did not discuss or alter the timeframe.[83]  And the defendants have not raised the issue here or at any other time with the court.  Nevertheless, they unilaterally applied (and continue to apply) a 42-day period.  Their reason: because the court applied this timeframe in a separate discovery order compelling production of documents in response to RFP 9.[84]

---

[79] (*Id.* ¶ 20.)

[80] (*Id.* ¶ 23.)

[81] (Pl.'s First Set of Disc. Reqs. 7, Doc. No. 64-1.)

[82] (*See* Defs.' Second Am. Resps. to Pl.'s First Set of Disc. Reqs. 9–12, Doc. No. 64-3; Defs.' Opp'n to Mot. to Compel, Doc. No. 66.)

[83] (*See* March 2025 Disc. Order, Doc. No. 74.)

[84] (Opp'n to Default J. Mot., Doc. No. 104 at 8–9.)

This justification is implausible. The December 2024 order only involved RFP 9, and Mr. David had agreed the timeframe for *that request* could be limited.[85] With RFP 9, Mr. David sought business telephone records from six individual defendants.[86] But the requests at issue in the March 2025 discovery order seek documents and communications relating to interrogatory responses (RFP 1), Mr. David (RFP 2), the county's policies, guidelines, rules, or procedures (RFP 3), complaints to the county (RFP 5), the nonparties involved with the boulder extraction operation (RFP 7), council meetings (RFP 10), inspection of the boulder extraction property (RFP 11), and this litigation (RFPs 12 and 13).[87] These are substantively different requests subject to a different discovery order. Beyond stating that the court applied a shorter timeframe to RFP 9, the defendants make no effort to explain why they are justified in doing the same for these requests.

Because the defendants still have not produced all responsive documents as requested by RFPs 1, 2, 3, 5, 7, 10, 11, 12, and 13—now nearly a year later—they have failed to obey the court's March 2025 discovery order. Accordingly, the defendants are subject to sanctions under Rule 37(b)(2).[88] Mr. David seeks default judgment or various

---

[85] (Dec. 2024 Disc. Order 2–3, Doc. No. 62.)

[86] (Pl.'s First Set of Disc. Reqs. 11, Doc. No. 64-1.)

[87] (*Id.* at 9–11.)

[88] *See Markham v. Nat'l States Ins. Co.*, No. CIV-02-1606, 2004 U.S. Dist. LEXIS 26509, at *37 (W.D. Okla. Jan. 8, 2004) (unpublished) (explaining that, under Rule 37(b), "a litigant which has clearly violated a discovery order is, on that basis alone, exposed to the imposition of sanctions" (citing *Creative Gifts. Inc. v. UFO*, 235 F.3d 540,

18

alternatives (including adverse factual findings, an order prohibiting the defendants from introducing evidence, and an order to show cause for contempt), and attorney's fees. As explained below, only a grant of attorney's fees is justified.  But more severe sanctions may be appropriate should the defendants' noncompliance continue.

### 3. Default Judgement

To start, entering default judgment against the defendants is not an appropriate sanction at this time.  Default judgment is an extreme sanction that should be used as a last resort.[89]  To be sure, some of the *Ehrenhaus* factors favor an extreme sanction. For instance, the defendants' piecemeal productions prejudiced Mr. David by delaying this case, interfering with his ability to depose witnesses, and impeding his ability to prepare and prosecute his claims.

The second and third factors (interference with judicial process and culpability) also slightly favor default judgment.  The defendants' delays and failure to comply with the court's order have interfered with the judicial process.  And the defendants are culpable for this delay and failure.  They also unilaterally applied a significantly shorter timeframe without Mr. David's (or the court's) approval, leading to the present motions.

---

549 (10th Cir. 2000) and *Ehrenhaus*, 965 F.2d at 920)); *see also Beilue v. Int'l Broth. of Teamsters, Local No. 492*, 13 F. App'x 810, 813 (10th Cir. 2001) (unpublished) ("'The Rule permits a sanction when a party "fails to obey an order," a failure which is not absolved upon production[.]'" (quoting *Ohio v. Arthur Anderson & Co.*, 570 F.2d 1370, 1374 (10th Cir. 1978) (quoting Fed. R. Civ. P. 37(b)(2)))).

[89] *See Ehrenhaus*, 965 F.2d at 920 (recognizing "dismissal represents an extreme sanction" that "should be used as a weapon of last, rather than first, resort" (citations omitted); *see also Derma Pen*, 736 F. App'x at 745 (holding the same for default judgment).

But according to counsel's statements at the hearing, the defendants appear intent on completing production soon.

Although these factors favor default judgment, they are outweighed by the remaining factors, which strongly disfavor imposing this last-resort sanction at this time. Significantly, the court has not previously warned the defendants that failure to comply with orders may result in default judgment. Mr. David contends no specific prior warning is required, noting the court previously told defense counsel it has had "ample time to get up to speed" on this case.[90] But he bases this argument principally on *Federal Deposit Insurance Corporation v. Daily*,[91] which predates *Ehrenhaus* and does not stand for the proposition that a specific warning is unnecessary before entering default judgment.[92] And to the extent Mr. David suggests the court may overlook the warning factor entirely, he is incorrect. Whether the court has previously warned a party severe sanctions would likely result from noncompliance is undeniably relevant before

---

[90] (Default J. Mot. 15–16, Doc. No. 96 (citing Am. Scheduling Order 1, Doc. No. 93).)

[91] 973 F.2d 1525 (10th Cir. 1992).

[92] *See id.* at 1529–31 (concluding the district court properly applied the factors in *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1465 (10th Cir. 1988)—which are the first three *Ehrenhaus* factors—when entering default judgment). Mr. David also cites *Garcia v. Berkshire Life Ins. Co. of Am.*, a case in which the court noted an explicit warning was not a "prerequisite" to imposing dismissal sanctions for intentionally fabricating evidence. 569 F. 3d 1174, 1180 (10th Cir. 2009). But *Garcia* is distinguishable, where the defendants here have not intentionally fabricated evidence. And *Garcia* does not support the proposition that the "prior warning" factor can be completely disregarded.

20

imposing such sanctions.[93]  The statement in the scheduling order—that counsel had time to come up to speed—does not signal the potential of default judgment.  And such a severe sanction "cannot come as a complete surprise" to the defendants.[94]  The fact that the court has not clearly warned the defendants that default judgment may be imposed if they fail to comply with discovery orders strongly disfavors imposing this severe sanction right now.

Likewise, the fact that lesser sanctions may be effective strongly disfavors imposing default judgment.  For instance, an order to complete production with a certification that all responsive documents for the relevant period have been produced may deter further noncompliance.[95]  In this case, an order to complete production of all documents responsive to RFPs 1, 2, 3, 5, 7, 10, 11, 12, and 13 for the full period identified in the discovery requests (or as mutually agreed to by the parties)—along with a certification of completeness and the production of privilege logs identifying any withheld documents—is a sufficient lesser sanction.[96]  This final, lesser step advances

---

[93] *See Ehrenhaus*, 965 F.2d at 921 (citing *Willner v. Univ. of Kan.*, 848 F.2d 1023, 1030 (10th Cir. 1988) (per curiam)).

[94] *See Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1212 (D. Utah 2011).

[95] *See, e.g.*, *Wiltech Tech., Inc. v. Wilson*, No. 1:20-cv-00975, 2024 U.S. Dist. LEXIS 11314, at *20 (D.N.M. Jan. 22, 2024) (unpublished) (ordering certification regarding documents at issue as a lesser sanction).

[96] If the defendants are incapable of complying with the court's orders and their discovery obligations as currently staffed, the solution is not to delay discovery production month after month after month.  Nor is it to unilaterally limit the timeframe of the documents sought.  The solution is hire a professional e-discovery vendor to assist

the judicial system's strong interest in resolving cases on their merits.[97]  (To facilitate compliance with this order, the discovery period will be extended—which will help mitigate the prejudice to Mr. David by giving him time to move for discovery relief as justified, based on information not previously produced.)[98]

The likely effectiveness of this lesser sanction, along with the lack of prior warning, outweigh the other *Ehrenhaus* factors and counsel against imposing default judgment.  In addition, where the defendants demonstrated at least some efforts to comply with the March 2025 discovery order and have not previously disobeyed other orders, their noncompliance does not appear to be sufficiently willful to warrant default judgment at this time.[99]  However, the court's concerns about the defendants' incomplete production remain unquelled, in part because the productions have been and continue to be based on a unilaterally altered timeframe Mr. David did not assent to and the court did not approve.  Mr. David's motion for default judgment under Rule

---

with compliance.  Or the defendants could simply produce all the documents collected in their search to Mr. David, to permit him to run his own searches and decide which are responsive to his requests.

[97] *See, e.g.*, *Ehrenhaus*, 965 F.2d at 921.

[98] The parties must cooperatively attempt to resolve any issues relating to this order.  If meet-and-confer efforts are unsuccessful, appropriate motions seeking compliance should be filed on a timely, ongoing basis; grievances should not be stored up until the end of the discovery period.

[99] *Derma Pen*, 736 F. App'x at 745 (explaining that, because default judgment is "'an extreme sanction,' it is 'appropriate only in cases of willful misconduct'" (quoting *Ehrenhaus*, 965 F.2d at 920)).

37(b)(2)(A) is denied at this time, but compliance with this order is required, or this sanction may be revisited.[100]

### 4. Adverse Factual Findings and Prohibiting Evidence

Mr. David also fails to justify some alternative sanctions he seeks under Rule 37(b)(2)(A)—namely, adverse factual findings and prohibiting evidence. Mr. David generally contends the court should make certain adverse factual findings because the RFPs here "have gone to the merits" of his claims.[101]  But he fails to connect the requested findings to the RFPs at issue. He also—in a single sentence—argues the court should prohibit the defendants from opposing his claims and introducing evidence.[102]  Yet he offers no explanation as to why or authority supporting this request. Where Mr. David appears to base both these requests on his view of the *Ehrenhaus*

---

[100] *Vicidiem, Inc. v. Christensen*, No. 2:19-cv-358, 2020 U.S. Dist. LEXIS 81773, at *3 (D. Utah May 8, 2020) (unpublished) (explaining cooperation in discovery "is not only helpful, but required, and the court has the duty to ensure that such cooperation is forthcoming" (quoting *Ohio v. Crofters, Inc.*, 75 F.R.D. 12, 21 (D. Colo. 1977), *aff'd sub nom. Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370 (10th Cir. 1978))); *Golden v. Mentor Capital, Inc.*, No. 2:15-cv-176, 2017 U.S. Dist. LEXIS 84140, at *3 (D. Utah June 1, 2017) (unpublished) ("Rule 37 vests the court with authority to encourage cooperation . . . .").

[101] (Default J. Mot. 22–23, Doc. No. 96 (referencing Fed. R. Civ. P. 37(b)(2)(A)(i)).) Specifically, Mr. David asks for findings that the defendants: failed to follow their rules, regulations, or ordinances in permitting the boulder extraction operation; failed to require the nonparties conducting the operation to mitigate damages; knew the nonparties running the project were at times moving boulders without a permit; had no formal comment policy for each county council meeting; violated the informal comment policy at the meetings; intended to stop Mr. David from speaking at the August 2022 meeting; and forced him to file records requests. (*Id.*)

[102] (*Id.* at 22 (referencing Fed. R. Civ. P. 37(b)(2)(A)(ii)).)

factors, they fail for the same reasons explained above.  Those factors tip against prohibiting evidence or making adverse factual findings, particularly where the defendants have had no prior warning of such sanctions and lesser sanctions would be effective.  Accordingly, Mr. David's requests for adverse factual findings and an order prohibiting the defendants from introducing evidence are denied.

### 5.  Order to Show Cause Regarding Contempt

Mr. David also asks the court to order the defendants to show cause why they should not be found in contempt of the March 2025 discovery order.  This request is denied.  Rule 37(b)(2)(A)(vii) permits a court to treat a party's failure to obey a discovery order as contempt of court, even without finding willfulness or bad faith.[103]  Civil contempt sanctions under this rule may be imposed to compel or coerce obedience to a court order, so long as clear and convincing evidence shows a valid court order existed, the defendants knew of the order, and they disobeyed it.[104]  While these elements may be present here, an order to show cause for contempt would do little to compel obedience—where this order already demands the defendants complete production or face potentially more severe sanctions.  Accordingly, Mr. David's request for an order to show cause regarding contempt is denied.

---

[103] *See* Fed. R. Civ. P. 37(b)(2)(A)(vii); *Markham*, 2004 U.S. Dist. LEXIS 26509, at *37 ("At least where the extreme sanctions of default or dismissal are not imposed, a showing of willfulness or bad faith need not be made.").

[104] *See Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1238 (10th Cir. 2018); *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998).

### 6. Attorney's Fees

Finally, it is appropriate to impose attorney's fees for the defendants' failure to comply with the March 2025 discovery order.  As noted above, Rule 37(b)(2)(C) provides that, "[i]nstead of or in addition to" the orders available under Rule 37(b)(2)(A), the court must impose reasonable attorney's fees "caused by" the party's failure to obey a discovery order—unless the failure was substantially justified or other circumstances make an award unjust.[105]  Neither exception applies here.  Nothing suggests other circumstances would make a fee award unjust, particularly where the defendants failed to respond to Mr. David's request for attorney's fees altogether.

Nor is the defendants' failure to produce all responsive documents as requested by the April 2025 deadline substantially justified.  The defendants claim they underestimated the number of documents identified by the renewed search.[106]  Yet they did not work with Mr. David to try to narrow the search terms.  And even now, nearly a year later, they have yet to make a full production.  Moreover, they changed and applied a significantly shorter 42-day timeframe, rather than the five-year period defined in the requests.[107]  And this unilateral decision is particularly unjustified where the defendants never objected to the requested timeframe, did not secure Mr. David's assent or the court's approval, and offer no compelling reason now.  Accordingly, Mr. David's request

---

[105] *See* Fed. R. Civ. P. 37(b)(2)(C).

[106] (Stearmer Decl. ¶ 13, Doc. No. 104-1.)

[107] (Quist Decl. ¶ 23, Doc. No. 96-1 (citing Ex. 4 to Quist Decl., Conferral emails, Doc. No. 96-1 at 30).)

for attorney's fees incurred as a result of the defendants' noncompliance with the court's March 2025 discovery order is granted.[108]  And the defendants' request for fees in having to respond to this motion is denied.  They provide no authority or support for this request.  And the defendants have disobeyed the court's prior order, justifying Mr. David's motion and necessitating their response.

For these reasons, Mr. David's motion for sanctions for the defendants' failure to comply with discovery orders is granted in part and denied in part.  It is granted insofar as he seeks fees incurred as a result of the defendants' noncompliance with the court's March 2025 discovery order, but it is denied to the extent it seeks other sanctions.

## B. Spoliation

Separately, Mr. David moves for default judgment and attorney's fees based on spoliation.  He argues several individual defendants spoliated potentially relevant messages after receiving notice of a duty to preserve evidence in anticipation of litigation.[109]  He contends this prejudiced his ability to prosecute his claims, including his claim that the defendants conspired to violate his free speech rights at council meetings.[110]  In response, the defendants concede they had notice of a duty to preserve

---

[108] *See Turnbull v. Wilcken*, 893 F.2d 256, 259 (10th Cir. 1990) (explaining Rule 37(b)(2) permits awarding fees and expenses "resulting from noncompliance"); 8B *Wright & Miller's Federal Practice & Procedure* § 2289 (3d ed. 2025) ("The expenses that may be recovered under [Rule 37(b)(2)] are those 'caused by the failure' to obey an order and therefore do not include the expense of obtaining the order itself.").

[109] (Spoliation Mot. 8–11, Doc. No. 97.)

[110] (*Id.* at 8, 10.)

when Mr. David submitted his notice of claim on August 25, 2023.[111]  But they argue Mr. David has not shown they lost relevant texts they should have preserved, which cannot be restored through discovery, or that caused him prejudice.[112]  Nor has he shown the defendants *intended* to deprive him of any texts.[113]

Mr. David has shown that certain defendants spoliated evidence.  But he fails to justify imposing default judgment as a sanction because there is insufficient evidence the defendants acted with an intent to deprive him of using the deleted texts in this litigation.  Nevertheless, it is appropriate to award attorney's fees.

### 1. Legal Standards

Because Mr. David seeks sanctions for the spoliation of text messages, Rule 37(e) applies, as it governs spoliation of electronically stored information (ESI).[114]

---

[111] (Opp'n to Spoliation Mot. 5–7, Doc. No. 103.)  Mr. David agrees the defendants' duty to preserve arose by August 25, 2023.  (Spoliation Mot. 9, Doc. No. 97.)  But he also argues the duty arose at three earlier points in time.  (*Id.* at 9–10; Reply in Supp. of Spoliation Mot. 5–6, Doc. No. 108.)  As explained below, the evidence he relies on does not bear this out.

[112] (Opp'n to Spoliation Mot. 7–9, Doc. No. 103.)

[113] (*Id.* at 9–11.)

[114] Mr. David invokes the court's inherent powers to sanction a party for spoliating evidence.  (*See* Spoliation Mot. 7, Doc. No. 97.)  But Rule 37(e) was amended in 2015 to provide the exclusive framework to remedy spoliation of ESI.  *See Sky Jet M.G. Inc. v. VSE Aviation Servs., LLC*, No. 23-2210, 2025 U.S. Dist. LEXIS 111834, at *15 (D. Kan. June 12, 2025) (unpublished); *see also* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (stating the rule's language "forecloses reliance on inherent authority or state law to determine when certain measures should be used"); *Alsadi v. Intel Corp.*, No. CV-16-03738, 2020 U.S. Dist. LEXIS 126153, at *9 (D. Ariz. July 17, 2020) (unpublished) (collecting cases and explaining that "[t]he exclusive nature of Rule 37(e) sanctions for the loss of ESI has been widely recognized").  Notably, Mr. David

Under Rule 37(e), if ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court may impose sanctions.[115]  Where another party is prejudiced by the loss of the information, such sanctions may include "order[ing] measures no greater than necessary to cure the prejudice."[116]  However, "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation" may courts "enter a default judgment."[117]

### 2. ESI Spoliation Prerequisites

To start, Mr. David has established Rule 37(e)'s three prerequisites—the defendants spoliated texts they should have preserved but failed to take reasonable steps to preserve, and the information cannot be restored or replaced.  First, the defendants had notice of a duty to preserve information in the anticipation of litigation as of August 25, 2023, when Mr. David sent them his notice of claim letter.  The defendants concede as much.[118]  Mr. David argues the duty attached earlier—when he emailed the council in July 2022 saying he intended to sue, when he told Mr. Lefgren

---

sought default judgment for the deleted texts under Rule 37(e) in his Rule 37(b)(2)(A) motion discussed above.  The court construes that request for default judgment as part of his motion for spoliation sanctions here under Rule 37(e)(2)(C).

[115] Fed. R. Civ. P. 37(e).

[116] Fed. R. Civ. P. 37(e)(1).

[117] Fed. R. Civ. P. 37(e)(2)(C).

[118] (Opp'n to Spoliation Mot. 5–7, Doc. No. 103.)

the same ahead of the August 2022 council meeting, and when he threatened to sue during the February 2023 council meeting.[119]  But the record evidence does not support his assertions.[120]  Mr. David's August 25, 2023 notice of claim letter is the only sufficiently clear statement of an intent to sue to put the defendants on notice of their duty to preserve.

Second, after receiving such notice, the defendants failed to take reasonable steps to preserve information they should have preserved in anticipation of litigation.  It is undisputed that, on August 2, 2023, the defendants implemented a policy requiring county-issued phones to be set to automatically delete "all text messages and instant messages sent or received by county employees" every thirty days.[121]  The defendants received Mr. David's notice of claim twenty-three days later, then he filed suit in March 2024.  Presumably, the automatic deletion setting on the defendants' phones should

---

[119] (Spoliation Mot. 9–10, Doc. No. 97; Reply in Supp. of Spoliation Mot. 5–6, Doc. No. 108.)

[120] Although Mr. David mentioned the possibility of litigation, his statements were not sufficient to put the defendants on notice that he was likely to sue—until he sent his notice of claim.  (*See* Ex. A to Reply in Supp. of Spoliation Mot., Doc. No. 108-1 at 2 (July 2022 email to county employees asking whether the permit had been approved so he would know "*whether to put Wasatch County on notice* of [his] intent to file a lawsuit" (emphasis added)); Ex. A to Spoliation Mot., Lefgren Dep. Tr. 133:5–13, Doc. No. 97-1 (testifying he does not recall when he heard Mr. David was suing and does not know when he spoke with Mr. David about his intent to sue); Ex. B to Reply in Supp. of Spoliation Mot., Doc. No. 108-2 (Mr. David August 3, 2022 email thanking Mr. Lefgren "for the conversation today" but not suggesting an intent to sue); Ex. E to Opp'n to Default J. Mot., Doc. No. 104-1 (transcript of Mr. David's statements at February 2023 council meeting, where he accused the county of violating his First Amendment rights and referred to various criminal and civil statues, but did not threaten to sue).)

[121] (*See* Ex. B to Spoliation Mot., Doc. No. 97-2 at 2, 5.)

29

have been turned off on August 25, 2023, the date of the notice—meaning messages

going back to July 24, 2023, should have been preserved.[122]  But evidence suggests

they were not.  The defendants produced no "litigation hold" notices or related

communications in this case.[123]  And in their own discovery responses, they admit

certain defendants deleted texts after August 25.

Specifically, Mr. Grabau did not turn off the "30-day automatic deletion" setting on

his county-issued phone "to preserve texts for this litigation" until December 2024,

meaning his phone deleted potentially relevant information every thirty days for *fifteen

months* after being on notice of a duty to preserve.[124]  In July 2025, the defendants

stated that Mr. Lefgren's phone was set to "automatic deletion of all texts after one year"

until "very recently."[125]  This means Mr. Lefgren left the autodelete setting on his phone

active for approximately *twenty-two months* after the duty to preserve attached.  In

addition, the county wiped Mr. Searle's phone in October 2024 when it was stolen, and

there is no indication Mr. Searle first tried to preserve data from a phone back-up.[126]

---

[122] At the hearing, Mr. David argued the county's policy would not have taken effect until
thirty days after the August 2, 2023 council meeting.  But he provided no evidentiary
support for this assertion, and the defendants contended this is incorrect.

[123] (*See* Ex. F to Spoliation Mot. 8, Defs.' Resp. to RFP 19, Doc. No. 97-6.)

[124] (*See* Ex. G to Spoliation Mot. 3–4, Defs.' Resp. to Interrog. 17, Doc. No. 97-7.)

[125] (*Id.* at 3.)

[126] (*Id.* at 4.)  Although the defendants' discovery responses indicate Mr. Wade and Ms.
Crittenden deleted potentially relevant texts from their phones, there is insufficient
information to find they did so after the duty to preserve attached.  Mr. Wade deleted all
county-related text messages from his phone "by sometime in 2023," and Ms.

Third, there is no indication the deleted texts can be restored or replaced by additional discovery.  At least for Mr. Grabau, Mr. Lefgren, and Mr. Searle, it is difficult to see how the potentially relevant information deleted from their phones can be restored.  And the defendants offer little to no insight into this.  They merely note they are still in the process of reviewing and producing documents, which may include more texts.[127]  But it is unclear how or whether texts deleted years ago could be recovered.  Accordingly, Mr. David has demonstrated the prerequisites for finding spoliation (at least for texts deleted from Mr. Grabau's, Mr. Lefgren's, and Mr. Searle's phones).  However, as explained next, he fails to justify default judgment as a sanction, but attorney's fees are appropriate.

### 3.  Default Judgement (Intent to Deprive)

Default judgment is not warranted here because Mr. David has not shown the defendants acted with the intent to deprive him of the lost texts.  As noted above, Rule 37(e) permits courts to enter a default judgment for spoliation of ESI, but only upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation.[128]  Such intent "can be proved indirectly," but "there must be evidence of 'a serious and specific sort of culpability' regarding the loss of the relevant

---

Crittenden's cellphone provider was unable to save her texts when she switched plans in December 2022.  (*Id.* at 5, Defs.' Resp. to Interrog. 18.)

[127] (Opp'n to Spoliation Mot. 9, Doc. No. 103.)

[128] *See* Fed. R. Civ. 37(e)(2)(C).

ESI."[129]  Courts have found Rule 37(e)'s intent requirement satisfied where "evidence shows or it is reasonable to infer that the party purposefully destroyed evidence to avoid its litigation obligations."[130]  But "'[n]egligent or even grossly negligent behavior' does not suffice."[131]

Here, Mr. David has not shown the defendants acted with an intent to deprive him of the deleted texts.  He relies principally on the fact of the county's auto-deletion policy.[132]  He notes that the county implemented the policy at the August 2, 2023 council meeting, just six months after the February council meeting where he claims he threatened to sue.[133]  But Mr. David did not threaten to sue at the February 2023 council meeting.[134]  And while the county's policy may hinder transparency, nothing suggests the county implemented the policy for the purpose of avoiding its litigation obligations in this case.  Indeed, Mr. David submitted his notice of claim weeks after the

---

[129] *Sky Jet*, 2025 U.S. Dist. LEXIS 111834, at \*15 (quoting *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018)).

[130] *Franklin v. Stephenson*, No. 20-cv-0576, 2022 U.S. Dist. LEXIS 184832, at \*25 (D.N.M. Feb. 16, 2022) (unpublished) (citation modified).

[131] *Sky Jet*, 2025 U.S. Dist. LEXIS 111834, at \*15 (quoting Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment).

[132] (Default J. Mot. 20–21, Doc. No. 96.)

[133] (*Id.* at 20.)

[134] (*Compare* Quist Decl. ¶ 34, Doc. No. 96-1 *with* Ex. E to Opp'n to Default J. Mot., Tr. Of Feb. 15, 2023 County Council Meeting, Doc. No. 104-1 at 24–40); *see also* Wasatch County, UT, Agendas & Minutes, County Council Regular Meeting (Feb. 15, 2023), https://wasatchcout.portal.civicclerk.com/event/122/media (Mr. David, speaking at 14:00–18:00, raised concerns relating to the extraction operation, noted he believed the council previously violated his free speech rights, but made no  threat to sue.).

county implemented the policy.  And although a county attorney at the meeting stated "[w]e can't provide in discovery what we don't have,"[135] she immediately added: "but if a case is pending, we have to save everything related to it."[136]

Apart from this, Mr. David points to the defendants' lack of "litigation hold" notice and discovery response admissions.  He argues the defendants' failure to issue a litigation hold notice evidences an intent to deprive.[137]  But he cites no authority supporting this proposition.  Instead, he relies almost exclusively on *Philips Electronics North America Corporation v. BC Technical*.[138]  But the *Philips* court noted only that a failure to issue a written litigation hold constituted gross negligence.[139]  In other words, *Philips* endorsed the proposition that a lack of litigation hold was *per se* gross negligence, not that it established an intent to deprive.  Moreover, more recent decisions have suggested this proposition from *Philips* is based on outdated precedent.[140]  Either way, Mr. David has not shown the defendants' lack of litigation hold, on its own, constitutes an intent to deprive.

---

[135] (Quist Decl. ¶ 36, Doc. No. 96-1 (quoting county attorney's statement at August 2, 2023 council meeting).)

[136] *See* Wasatch County, UT, Agendas & Minutes, County Council Regular Meeting at 35:00–35:14 (Aug. 2, 2023), https://wasatchcout.portal.civicclerk.com/event/274/media.

[137] (Default J. Mot. 19, Doc. No. 96; Reply in Supp. of Spoliation Mot. 9–10, Doc. No. 108.)

[138] 773 F. Supp. 2d 1149, 1203 (D. Utah 2011).

[139] *Id.* at 1203.

[140] *See First Am. Title Ins. Co. v. N.W. Title Ins. Agency, LLC*, No. 2:15-cv-00229, 2016 U.S. Dist. LEXIS 118377, at *5–6 (D. Utah Aug. 31, 2016) (unpublished) (explaining this

Finally, Mr. David relies on the evidence of deleted texts discussed above—for Mr. Searle, Mr. Lefgren, and Mr. Grabau—to show intent to deprive.[141]  But the county wiped Mr. Searle's phone in 2024 because it was stolen, suggesting the post-notice deletion was not for purposes of avoiding obligations in this litigation.  And, as for Mr. Lefgren and Mr. Grabau, the evidence does not suggest they purposefully (as opposed to negligently) left auto-deletion enabled to avoid their obligations in this case.  In other words, Mr. David has not shown these defendants acted with intent to deprive him of evidence such that default judgment is appropriate.  Accordingly, Mr. David's request for a default judgment spoliation sanction under Rule 37(e)(2) is denied.

### 4.  Attorney's Fees

However, Mr. David has shown he is entitled to attorney's fees incurred in bringing this motion.  Under Rule 37(e)(1), where a party is prejudiced by the loss of information, the court "may order measures no greater than necessary to cure the prejudice."[142]  Such measures may include awarding attorney's fees.[143]  Mr. Lefgren

---

ruling from *Philips* relied on case law the Second Circuit overruled); *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2nd Cir. 2012) ("We reject the notion that a failure to institute a 'litigation hold' constitutes gross negligence *per se*.").

[141] Although Mr. David also points to Mr. Wade and Ms. Crittenden, there is no evidence these defendants deleted messages after the duty to preserve attached, as noted above.

[142] Fed. R. Civ. P. 37(e)(1).

[143] *See SA Int'l, Inc. v. S.A. Int'l Israel Ltd.*, No. 2:23-cv-00877, 2025 U.S. Dist. LEXIS 255419, at *12 (D. Utah July 2, 2025) (unpublished) ("Rule 37(e)(1) authorizes an award of attorneys' fees and costs to the moving party to the extent reasonably necessary to address any prejudice from the spoliation.").

and Mr. Grabau lost texts by failing to disable auto-deletion on their phones for many months after receiving notice of Mr. David's claim.  This prejudiced Mr. David by depriving him of the opportunity to discover whether those text messages included information supporting his claims.  Even if the lost information was due to negligence, an award of attorney's fees for this prejudice is no greater than necessary.[144]  The defendants must pay Mr. David's reasonable expenses incurred in preparing and arguing the spoliation motion.  This fee award necessarily includes Mr. David's costs and attorney's fees for drafting the motion and reply in support and counsel's preparation for and performance at the hearing.

### CONCLUSION

Mr. David's motions[145] are granted in part and denied in part.  With respect to his motion for sanctions based on the defendants' failure to comply with the court's March 2025 discovery order, the court rules and orders as follows:

1. The requests for default judgment, adverse factual findings, an order prohibiting evidence, and an order to show cause are denied.

2. The defendants are ordered to make a complete production of all documents responsive to RFPs 1, 2, 3, 5, 7, 10, 11, 12, and 13 (the records at issue in the

---

[144] *See, e.g.*, *Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1295–96 (D.N.M. 2016) (explaining spoliation sanctions such as attorney's fees "may be imposed even where evidence was lost or destroyed due to negligence, so long as the party seeking sanctions can show it suffered prejudice and the other side was on notice that evidence should be preserved").

[145] (Doc. Nos. 96 & 97.)

March 2025 discovery order). And they must certify the completeness of the production. To be clear, by June 22, 2026, the defendants must: (1) produce all responsive documents for the full period identified in the discovery requests or as *mutually agreed* to by the parties; and (2) file a certification of completeness with the court. Any motions or claims of deficiency tied to this production, which the parties are unable to resolve through a meet and confer, must be filed promptly. This includes any motions to reopen depositions where justified.

3. The defendants are ordered to produce a full privilege log of the documents withheld to date by March 27, 2026 and an amended or addendum privilege log for and with any subsequent productions.

4. Mr. David's request for attorney's fees caused by the defendants' failure to comply with the court's March 2025 discovery order is granted. The parties are ordered to meet and confer regarding the amount of the fees incurred as a result of the defendants' noncompliance by April 3, 2026. Any motion regarding the amount must be filed by April 17, 2026.

5. The defendants are explicitly warned that failure to comply with this order may result in more severe sanctions, such as default judgment or adverse jury instructions.

With respect to Mr. David's motion for spoliation sanctions, the court rules and orders as follows:

1. The request for default judgment as a spoliation sanction is denied.

36

2.  The request for attorney's fees incurred in preparing and arguing the spoliation

    motion is granted.  The parties are ordered to meet and confer regarding the

    amount of the fees by April 3, 2026.  Any motion regarding the amount must be

    filed by April 17, 2026.

Finally, an amended scheduling order will be issued concurrently with this order to

provide sufficient time for the defendants to comply with this order and for the parties to

complete discovery.

DATED this 20th day of March, 2026.

BY THE COURT:

_Daphne A. Oberg_

Daphne A. Oberg
United States Magistrate Judge

37